UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBIN J. MASSA, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:18-CV-877-SPM |
| | ) ) ) | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Robin J. Massa ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

## I. PROCEDURAL BACKGROUND

On March 16, 2015, Plaintiff applied for DIB, alleging that she had been unable to work since March 13, 2015. (Tr. 145-46). Her date last insured was September 30, 2015. (Tr. 16). Her application was initially denied. (Tr. 75-78). On August 25, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 82-83). On September 13, 2017, the ALJ issued an unfavorable decision. (Tr. 11-27). On October 2, 2017, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 142). On May 1, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

At the outset, the Court notes that because Plaintiff's date last insured was September 30, 2015, she was required to show that she was disabled prior to that date. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). Thus, as the ALJ did, the Court will focus primarily on the facts relevant to the period between her alleged onset date (March 13, 2015) and her date last insured (September 30, 2015). Additionally, because Plaintiff's challenges to the ALJ's decision focus on her physical impairments rather than her mental impairments, the Court will focus primarily on the evidence relevant to her physical impairments.

On June 4, 2015, Plaintiff completed a Function Report in which she reported that she was unable to stand for more than ten minutes without back pain; that sitting too long hurt; that she could not lift things on a regular basis due to rib and back pain; and that she got shortness of breath walking up and down stairs or for long distances. (Tr. 199). She reported that she typically makes a cup of coffee, sits on a computer for about an hour, watches television, and tries to do some light housework, such as sweeping or dusting. She reported waking up several times a night and having

difficulty falling asleep. (Tr. 200). She reported being able to drive for about an hour at a time. (Tr. 200). She prepared simple meals daily. (Tr. 201). She reported sweeping floors, dusting, and doing laundry, though her spouse carried the laundry up and down the stairs. (Tr. 201). She reported shopping in stores for groceries. (Tr. 202). She reported that she can no longer go to yard sales, because getting in and out of the car often hurts. (Tr. 206). She stated that she cannot hold her grandchild for longer than ten minutes if she is sitting down. (Tr. 206). She stated that her back and rib cage hurt constantly and that pain relievers do not really help. (Tr. 206). She also stated that due to her chronic fibromyalgia, she has not been able to do anything that she used to do; if she does anything extra, she cannot move very well the following day. (Tr. 206).

On April 13, 2017, Plaintiff testified as follows at the hearing before the ALJ. Plaintiff testified that she gets short of breath when she does a lot of walking or goes up steps. (Tr. 41). Her lower back hurts all the way down into her left leg. (Tr. 41). She cannot sit for very long and cannot walk or stand for very long. (Tr. 41). She also has COPD (Tr. 41). Plaintiff has also been diagnosed with fibromyalgia, which causes her shoulders to ache and causes joint pain in her elbows, knees, and hips. (Tr. 42). Plaintiff has been depressed for several years and is on medication. (Tr. 41). Plaintiff testified that she has good days and bad days. (Tr. 42). On a bad day, she gets up, makes a little breakfast, and sits in her recliner off and on all day long. (Tr. 42). On a good day, she might go out into the backyard with her dogs or might drive to the Dollar Store. (Tr. 42). She testified that she has bad days about three or four days a week, which is an improvement over when she stopped working and the bad days were every day. (Tr. 44).

Plaintiff stopped working in March 2015, because she could not do her job anymore. (Tr. 43). She had trouble carrying and filing legal briefs, and she had trouble walking up and down the

3

steps to the basement to get the mail. (Tr. 43). She also could not sit for very long. (Tr. 43). She also had bouts of crying fits on the job. (Tr. 43). Her energy level was very low. (Tr. 44).

Plaintiff's daughter also testified at the hearing before the ALJ. Plaintiff's daughter testified that before Plaintiff moved in with her, Plaintiff's daughter visited her three to five times a week to do "typically all of her housework," including laundry, sweeping, cleaning bathrooms, doing dishes, and yard work. (Tr. 47). Plaintiff was able to do some of those activities with her daughter, but it took her a long time because she could only stand for a little while. (Tr. 48). She seems to be okay if she is standing or walking for short periods of time, but she could not, for example, stand at the sink for half an hour to do dishes. (Tr. 48).

Plaintiff's medical records show that in the months leading up to Plaintiff's alleged disability onset date, Plaintiff reported pain in her ribs and thoracic spine, for which she received various medications. (Tr. 249, 253-59, 279-84, 295-301, 322-25, 358-360). In January 2015, she also began reporting pain in her lumbar spine. (Tr. 279-84). A January 2015 X-ray of the lumbar spine showed normal alignment, no evident spondylosis, and no osseous abnormality. (Tr. 249). In February 2015, she also began reporting pain in her shoulder, neck, knee, hand, elbow, and ankle. (Tr. 295). A plan was made for physical therapy. (Tr. 301).

After her alleged disability onset date, Plaintiff continued to have back pain, as well as respiratory issues. On March 17, 2015, Plaintiff called her doctor's office with questions about her medications, stating that she had been in quite a bit of pain recently. (Tr. 348). On April 27, 2015, Plaintiff presented to the emergency room with chest pain. (Tr. 376). On July 28, 2015, an MRI of the thoracic spine performed due to mid back pain showed no evidence of central canal or neuroforaminal stenosis throughout the thoracic spine; no evidence of disc bulge or herniation within the thoracic region; and "partial visualization of a disc bulge/HNP at the C5-6 level." (Tr.

536). On August 20-21, 2015, a pulse oximetry summary report indicated that Plaintiff qualified for nocturnal oxygen under Medicare guidelines. (Tr. 515). On September 2, 2015, Plaintiff was diagnosed with chronic obstructive lung disease, benign essential hypertension, anxiety, and abnormal liver function, and smoking cessation was strongly recommended. (Tr. 400). On September 8, 2015, a lumbar spine X-ray showed mild degenerative changes of the lumbar spine (Tr. 644); a lumbar spine MRI showed degenerative changes of the lumbar spine resulting in mild spinal canal and mild-to-moderate neuroforaminal stenoses (Tr. 642-43); and a pelvic X-ray showed mild degenerative changes of the sacroiliac joints and the hips (Tr. 640). On September 24, 2015, Plaintiff filled out a physical therapy questionnaire indicating that pain medication provided her with little pain relief and that she had difficulty walking more than a quarter of a mile, sitting for an hour, or standing for more than a half an hour. (Tr. 548). Her "Oswestry Back Disability Index" showed a total disability score of 48%, though it was noted that the score was expected to decline over the course of treatment. (Tr. 547). A plan was made for physical therapy two to three times per week for four to six weeks. (Tr. 551). On September 29, 2015, Plaintiff returned to physical therapy, though she was unable to tolerate some exercises. (Tr. 556-57).

In the months following Plaintiff's date last insured, she had steroid injections for lumbar pain (Tr. 678-79), and she went to the emergency room on several occasions for rib, chest, or abdominal pain or breathing problems (Tr. 495, 568-69, 575, 583). She also sought treatment for pulmonary issues and thoracic spine pain. (Tr. 620, 627, 395-98, 504-05).

With respect to the other details Plaintiff's medical records and the other records in the administrative transcript, the Court adopts the facts as presented in the parties' respective statements of fact. The Court will cite to specific portions of the transcript as needed in the discussion below.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff last met the insured status requirements of the Act on September 30, 2015, and that she did not engage in substantial gainful activity during the period from her alleged onset date of March 13, 2015 through her date last insured of September 30, 2015. (Tr. 16). The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, obesity, degenerative changes of the hips and sacroiliac joints, and a combination of respiratory impairments, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 16-17). The ALJ found that through the date last insured,

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should never climb ropes, ladders or scaffolds but is able to occasionally climb ramps and stairs. She needed to avoid concentrated exposure to pulmonary irritants such as gases and fumes. The clamant was limited to routine, repetitive tasks.

(Tr. 18).

The ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. (Tr. 21). However, relying on the testimony of a vocational expert, the ALJ found that through the date last insured, there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed, such as retail marketer (*Dictionary of Occupational Titles* ("*DOT*") No. 209.587-034, electronic sub-assembler (*DOT* No. 729.684-054), and small parts assembler (*DOT* No. 706.684-022). (Tr. 22). The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from March 13, 2015, the alleged onset date, through September 30, 2015, the date last insured.

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to fully and fairly develop the record, and (2) that the ALJ failed to properly consider Plaintiff's RFC.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Remand Is Required to Obtain Medical Evidence to Support the RFC

Plaintiff argues that the ALJ failed to fully and fairly develop the record in this case, because the record does not contain any medical evidence that addresses Plaintiff's physical ability

9

to function in the workplace and that supports the RFC assessment. Plaintiff also argues that the RFC is not supported by substantial evidence. The Court agrees.

The claimant "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). However, it is well settled that "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) and *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). The ALJ's duty extends even to cases where the claimant is represented by an attorney at the administrative hearing. *Id. (*citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)).

"When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016). However, "a claimant's RFC is a medical question, and some medical evidence must support the RFC determination." *Id*. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Nader v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). However, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Id. Accord Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001).

The Court first notes that the record contains no opinion evidence from any source with regard to Plaintiff's physical ability to function in the workplace. As Defendant points out, the

absence of such medical opinion evidence does not necessarily require remand. The Eighth Circuit has held that in some cases, mild or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing Plaintiff's ability to function in the workplace. *See, e.g.*, *Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) (affirming a finding that the claimant was not disabled; noting, "While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *Hensley v. Colvin*, 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence; finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" where the plaintiff's treating physician found that the plaintiff was in no acute distress and had a normal knee exam and gait; another physician found that his knee assessment was normal and he had "full knee range, good lower limb and spinal flexibility"; and the plaintiff reported greatly reduced or nonexistent knee and back pain after treatment); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was " 'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry" ). *See also Thornhill v. Colvin,* No. 4:12–CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

In this case, however, unlike the above cases, the record does not contain consistently mild or unremarkable objective findings during the relevant period, nor does it contain other medical evidence that tends to support the RFC. Instead, much of the objective and other medical evidence appears to provide significant support for Plaintiff's assertion that she had lower and middle back pain during the relevant time frame that significantly impacted her ability to sit, stand, and walk for significant periods of time. Plaintiff's treatment providers often noted objective physical examination findings supportive of Plaintiff's complaints, including findings of tenderness to palpation in the thoracic and lumbar spine; pain with flexion and extension; "very tight erector spinae along entire spine"; hypomobility in the lumbar spine; and dizziness with rotation of the spine. (Tr. 258-59, 283-84, 299, 549-50, 554). Plaintiff's physical therapist also noted, in September 2015, "Pt presented with signs and symptoms consistent with low back pain with radicular symptoms on outer thigh of left LE to the knee." (Tr. 554). Additionally, on the Oswestry Back Disability Index (ODI), Plaintiff was assigned a "total disability score" of 48%. (Tr. 547). Although it was noted that scores were excepted to decline over the course of physical therapy treatment, there is no indication in the record that such improvement actually occurred. (Tr. 547). Additionally, an MRI of the thoracic spine performed in July 2015 showed a "disc bulge/HNP at the C5-6 level" (Tr. 536), and a lumbar spine MRI performed in September 2015 showed "degenerative changes of the lumbar spine resulting in mild spinal canal and mild-to-moderate neuroforaminal stenoses" (Tr. 643).

Moreover, during (and shortly before) the relevant time period, Plaintiff consistently reported to her providers moderate to severe back pain, aggravated by physical activity, even while taking her medications; she saw a pain management specialist, was prescribed narcotic and non-narcotic pain medications, and was referred to physical therapy. (Tr. 279-84, 295-301, 348-49,

358, 549, 556). There is little evidence that Plaintiff's condition improved significantly from either physical therapy or medications. Additionally, Plaintiff's own reports of her limited daily activities and difficulty sitting, standing, and walking are consistent with a finding that she was not capable of light work during the relevant period.

The Commissioner suggests that certain mild or unremarkable objective findings in the record provide support for the RFC. As the Commissioner points out, and as the ALJ noted, the record before and during the relevant period does contain some imaging results that are normal or unremarkable, including a January 2015 bone scan showing no osseous abnormality (Tr. 249), a July 2015 thoracic MRI finding showing no evidence of central canal or neuroforaminal stenosis and no evidence of disc bulge or herniation in the thoracic region (Tr. 536); and September 2015 X-rays showing only mild degenerative changes of the hips and lumbar spine (Tr. 640, 644).[2] However, neither the ALJ nor the Commissioner explains how these imaging results provide support for the finding that Plaintiff can perform the standing, walking, sitting, lifting, and carrying activities required for light work—particularly in light of the other abnormal imaging results and abnormal objective physical examination findings in the record. The Eighth Circuit has cautioned that "[t]he ALJ may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). On the particular facts of this case, in the absence of any medical opinion evidence addressing how the various positive and

---

[2] Defendant also argues that the ALJ's finding is supported by the fact that "examinations consistently showed intact motor strength, sensation, reflexes, and gait before, during, and after the relevant period," *See* Doc. 25, at 7. However, nearly all of the records on which Defendant relies are dated prior to the alleged disability onset date, and thus are of limited relevance. (Tr. 257, 283, 298-99, 324, 328, 351, 356, 363). The other record Defendant relies on is dated two months after the date last insured and does not appear to contain any objective findings regarding motor strength, sensation, reflexes, or gait. (Tr. 620).

negative objective findings in the record relate to Plaintiff's physical ability to function in the workplace, the Court cannot say that the RFC is supported by "some medical evidence," nor can the Court determine whether the RFC is supported by substantial evidence on the record as a whole.

In sum, because the ALJ's RFC assessment was not informed and supported by "some medical evidence" in the record that addressed Plaintiff's physical ability to function in the workplace, this case must be reversed and remanded for further consideration. *See Combs*, 878 F.3d at 647. On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function, perhaps by contacting one of her treating physicians or by obtaining the services of an expert to review the record during the relevant time period.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2019.